Eastern District of Kentucky
**FILED**

JUL 14 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-292-KSF

LORI SHREVE                                                             PLAINTIFF

V.                              **OPINION & ORDER**

JESSAMINE COUNTY                              DEFENDANTS
FISCAL COURT, et al.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon defendant's motion for summary judgment [DE #6]. Having been fully briefed, this matter is ripe for review.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The plaintiff, Lori Shreve, presents claims under 42 U.S.C. § 1983 for the violation of Shreve's civil rights arising out of the use of excessive force by the defendants, Jessamine County Deputy Sheriffs David Mudd and Sean Franklin and the Jessamine County Sheriff's Department. Shreve also alleges a violation of the right to be free from unreasonable search and seizure guaranteed by the Fourth Amendment of the United States Constitution. Finally, Shreve presents state law claims for assault and battery, outrageous conduct, a cause of action pursuant to KRS 503.090, and a violation of the right to be free from unreasonable search and seizure guaranteed by Sections 2 and 10 of the Kentucky Constitution .

Shortly after midnight on September 12, 2003, Deputy Mudd drove to a home located at 121 Molly Circle, Nicholasville, Kentucky, where Shreve resided with her boyfriend, George Bitting, in order to execute an arrest warrant issued by the Fayette Circuit Court for Bail Jumping

in the second degree, a Class A Misdemeanor.  Once Deputy Mudd arrived at the residence he believed that Shreve was present at the residence based upon the existence of automobiles at the residence that matched identifying documents in his possession.  Deputy Mudd then summoned Deputy Franklin to assist him in the execution of the warrant.

Deputies Mudd and Franklin knocked on the door of the residence and rang the doorbell multiple times over the course of two hours.  The deputies also attempted to phone the residence and shined lights into the front of the residence.  During this time, Deputy Mudd observed a woman, whom he believed to be Shreve, looking out of an upstairs window.  The deputies attempted to pick the locks on the doors of the residence, but Bitting and/or Shreve re-locked the deadbolts each time the deputies unlocked them.  Eventually, the deputies forced their way into the back door.  The deputies immediately encountered Bitting inside the back door.  Bitting initially denied that Shreve was present at the residence, then stated that he had "no comment".

Shreve testified that she went to the second floor of the residence and hid in an unlit closest in one of the bedrooms.  She admitted that she heard the deputies enter the residence and knew that they were law enforcement officers.  She stayed in the closet trying to remain undiscovered with a blanket over her head, while listening to the deputies calling for her to come out.

The deputies eventually entered the bedroom in which Shreve was hiding.  When they opened the closet door, they noticed movement from under a blanket on the floor of the closet.  Deputy Mudd ordered Shreve to come out of the closet, but she did not move.  Deputy Mudd then warned her that he was going to spray pepper spray if she did not come out of the closet.  Shreve did not respond or move, so Deputy Mudd sprayed the pepper spray generally into the

closet, but not specifically directed at Shreve.

Even after spraying the closet with pepper spray, Shreve persisted in refusing to come out of the closet. Deputy Mudd then grabbed at the blanket and pulled Shreve from the closet, gripping her arm and her hair. Deputy Mudd restrained Shreve by placing his knee above and across her back while attempting to handcuff her. Shreve refused to offer her hands for cuffing and kept them tightly tucked up under her torso. Deputy Mudd attempted several different pressure point distractions in order to get Shreve to release her hands, but she refused. Deputy Franklin then utilized a pressure point/pain distracting effort in order to cause Shreve to involuntarily produce her hands. The deputies handcuffed Shreve, stood her up and escorted her from the home.

Shreve claims that during the arrest she was struck multiple time in the face and back with a nightstick. She states that she did not actually see either Deputy Mudd or Deputy Franklin strike her with the nightstick, but saw one of the deputies with a stick in his hand. Shreve states that she sustained injuries to her back, neck, shoulders, wrist and face. Deputies Mudd and Franklin deny that they struck Shreve with any object.

Shreve has received no treatment or diagnosis for any injuries she alleges she suffered during the arrest, aside from manipulations done of her neck, back and shoulders by Bitting. Shreve has not produced any medical records documenting her injuries. The only evidence of her injuries is a color photograph taken at the jail shortly after her arrest.

## II. ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations

omitted).

### B. 42 U.S.C. § 1983 Claim

To state a viable § 1983 claim, plaintiff must allege: (1) that she was deprived of rights secured by the Federal Constitution or laws of the United States; and (2) that deprivation was caused by a person while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Defendants claims that their motion for summary judgment on Shreve's § 1983 claim should be granted because Deputies Mudd and Franklin are entitled to qualified immunity and there is a non-existence of genuine issues of material facts concerning Shreve's allegations.

### 1. Qualified Immunity

Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A court in this circuit undertaking a qualified immunity analysis must first determine whether the plaintiff has alleged a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The right allegedly violated cannot be asserted at a high level of generality, but, instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Court in *Harlow* explained, the

5

"reasonable person," in this instance, is a "reasonably competent public official [who] should know the law governing his conduct." *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727. To overcome qualified immunity, the right allegedly violated must be so clear that any reasonable public official in the defendant's position would understand that his conduct violated the right: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

> The Sixth Circuit has established that there are two ways in which a plaintiff seeking to overcome the bar of qualified immunity can show that a right was clearly established in the law at the time the alleged violation occurred. First, "a district court within this circuit must find binding precedent from the Supreme Court, the Sixth Circuit, or ... itself" that directly establishes the conduct in question as a violation of the plaintiff's rights. *Summar v. Bennett,* 157 F.3d 1054, 1058 (6th Cir.1998). If no binding precedent is "directly on point," the court may still find a clearly established right if it can discern a generally applicable principle from either binding or persuasive authorities whose "specific application to the relevant controversy" is "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.; accord Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

### 2.   Excessive Force

The essential question before this court is whether – from the facts provided in Shreve's deposition and shaped by the other evidence – a reasonable finder of fact could conclude that Deputies Mudd and Franklin used excessive force when arresting Shreve. Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham v. Connor,* 490 U.S. 486, 496 (1989) (internal citations and quotations omitted).

The Sixth Circuit has applied the three factors set forth in *Graham* in order to determine

6

objective reasonableness: (1) "the severity of the crime at issue," (2) "whether the subject pose[d] a threat to anyone," and (3) "whether the suspect [was] attempting to escape or ... resisting arrest." *Patrick v. City of Detroit*, 906 F.2d 1108, 1115 (6th Cir.1990). Furthermore the standard of reasonableness must be "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Shreve claims that Deputies Mudd and Franklin used excessive force by: (1) using pepper spray on her; (2) placing a knee in her back; (3) striking her with a nightstick. Deputies Mudd and Franklin assert that they did not use any more force than was reasonably necessary in order to arrest Shreve.

In the instant case, Shreve fled to an unlit closet in the upstairs of her residence in order to avoid being arrested by the deputies. Even after the deputies demanded that Shreve come out of the closet, she refused to do so. The deputies had the right to use necessary physical force in arresting Shreve. *Graham*, 490 U.S. at 396. The Court must therefore focus on the nature and degree of force used by Deputies Mudd and Franklin.

First, Shreve complains that the use of pepper spray amounted to excessive force. The use of pepper spray is not per se unreasonable, but the use of a chemical weapon, if unreasonable in manner, may constitute excessive force. *See Adams v. Metiva*, 31 F.3d 375, 384 (6th

7

Cir.1994). In the instant case, the deputies attempted to get Shreve to surrender multiple times. The deputies warned Shreve to come out of the closet or they would spray pepper spray into the closet. Even after this warning, Shreve refused to exit the closet. Thus, Deputy Mudd generally sprayed the pepper spray into the closet. Deputy Mudd did not directly spray the pepper spray at Shreve, whose head was covered with a blanket. Under these circumstances, the deputies' use of pepper spray was not unreasonable so as to constitute excessive force in violation of the Fourth Amendment.

Second, Shreve argues that Deputy Mudd used excessive force in placing his knee onto her back while attempting to handcuff Shreve. Even after being pepper sprayed and placed in a prone position, Shreve continued to resist arrest. Shreve refused to provide her hands for the officers to handcuff. Under these circumstances, Deputy Mudd's placing of his knee in Shreve's back in order to gain control was reasonable due to her continued resistance. *See Price v. County of San Diego*, 990 F.2d 1230 (S.D. Cal. 1998) (finding it reasonable for a deputy to place a knee on the detainee's back in order to control the resisting detainee).

Finally, Shreve claims that one of the deputies repeatedly hit her with a nightstick while attempting to arrest her. She believes that she was hit with a nightstick in the face and on the back. Shreve testified that she did not actually see either Deputy Mudd or Deputy Franklin strike her with a nightstick, but that she did see one of the officers with a nightstick in his hand. Deputies Mudd and Franklin deny striking Shreve with a nightstick. Even Shreve herself could not testify with certainty that she was struck with a night stick. Shreve has presented nothing more than a bald assertion that either Deputy Mudd or Deputy Franklin struck her with a nightstick; she has failed to present any evidence substantiating her claim.

8

Shreve asserts that the picture taken of her at the jail on the night of the arrest is evidence of her injuries.[1] These pictures show merely some bruising and redness. Her injuries appear relatively mild and could have been completely consistent with a reasonable use of force by Deputies Mudd and Franklin. Thus, the pictures are not sufficiently probative and created no trial worthy issue of fact on the question of whether Deputies Mudd and Franklin used excessive force. *See Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 & n.5 (8th Cir.1990) (summary judgment granted for police officer in part because the medical records reportedly showed only that the plaintiff had suffered a mild shoulder strain); *Raley v. Fraser*, 747 F.2d 287, 289 (5th Cir.1984) (minor bruises and scrapes were not severe injuries "grossly disproportionate to the need for action"); *Dean v. City of Worcester*, 924 F.2d 363, 369 (summary judgment granted for police officer in part because the plaintiff's minor physical injuries – cuts, scratches and bruises – were insufficient to support an inference that police officers had used inordinate force in arresting plaintiff).

Second, to the extent that Shreve suggests the deputies' conduct towards her was in retaliation for her refusing to answer the door and surrender to the deputies, we note that after the Supreme Court's decision in *Graham v. Connor*, 109 S.Ct. at 1872-73, the deputies' evil intentions, assuming Shreve could establish them at trial, are not relevant to a fourth amendment claim of excessive force. *Foster*, 914 F.2d at 1082.

Here, Shreve must concede that some force was objectively reasonable due to her resistance. Although in hindsight such force might not have been necessary, the Court is not to

---

[1] Shreve has failed to submit any type of medical records reflecting her alleged injuries or any treatment she has received since the night of her arrest.

9

judge the deputies' conduct from hindsight, but rather to place itself in the shoes of a reasonable deputy under the circumstances. Thus, the Court concludes that the force employed by the deputies in arresting Shreve was not excessive, but was reasonable under these circumstances. Therefore, the Court will grant Defendant's motion for summary judgment on this claim.[2]

### C.  Fourth Amendment Claim

Shreve also asserts that the Defendants' search of her home violated the Fourth Amendment. Shreve relies on *Payton v. New York*, 445 U.S. 573 (1980); however, *Payton* held that police officers are prohibited from entering a suspect's home *without* either an arrest or search warrant. In the instant case, Deputies Mudd and Franklin had an arrest warrant for Shreve. Subsequent Supreme Court cases have recognized that if police officers have an arrest warrant, the warrant alone is sufficient to authorize the entry into a person's home to effect his arrest. *See Stegald v. United States*, 451 U.S. 204, 214 (1981). *Stegald* states, "Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 214. In the instant case, Deputies Mudd and Franklin believed that Shreve was within the dwelling since Deputy Mudd had ascertained that he had located the correct residence and believed that Shreve was present based upon the existence of automobiles at the residence that matched identifying documents in his possession and based upon him believing

---

[2] In the introductory paragraph of her Complaint, Shreve states that the Complaint is brought pursuant to 42 U.S.C. §1983 *and* 42 U.S.C. §1985. Although Count I of the Complaint lays out the elements of a cause of action pursuant to §1983, the Complaint does not further discuss §1985. To the extent Shreve is attempting to state a cause of action under §1985, the Court will grant summary judgment for the Defendants on that claim also because there has not been any evidence presented to support such a claim.

he saw Shreve look out of one of the second story windows. Thus, it was reasonable for the deputies to have entered the home in order to effect Shreve's arrest.

### D. Official Capacity Claims and Claims Against Jessamine County Fiscal Court

Shreve states a cause of action against Deputies Mudd and Franklin in their official capacity and against the Jessamine County Fiscal Court ("Fiscal Court"). The claims against the deputies in their official capacity are another way of pleading an action against an entity of which an officer is an agent – in this case, the Fiscal Court. Shreve insists that the Fiscal Court should be liable for the negligent training and/or supervision of Deputies Mudd and Franklin. Since the Court has concluded that Deputies Mudd and Franklin acted reasonably under the circumstances, no cause of action can succeed against the Fiscal Court under § 1983 or the Fourth Amendment.

### E. State Law Claims

The supplemental jurisdiction statute, 28 U.S.C. § 1367, explicitly allows a trial court to dismiss pendent state law claims where all federal claims have been dismissed.[3] Moreover, this Court has engaged in a consideration of "the interests of judicial economy and the avoidance of multiplicity of litigation and [has] balance[d] these interests against needlessly deciding state law issues" and concludes that dismissal of the plaintiff's state law claims is warranted. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Finally, the Sixth Circuit has held that as a general matter where the federal claims are dismissed before trial, pendent state claims

---

[3] This section states in part that:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if– . . . the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c)(3).

should be dismissed as well. *Id.* The Court will decline to exercise supplemental jurisdiction over the remaining pendent state claims and will, therefore, remand the state law claims back to Jessamine Circuit Court.

### III. CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendants' motion for summary judgment with respect to plaintiff's federal law claims [DE #6] is GRANTED;

(2) judgment in favor of the defendants shall be entered contemporaneously herewith;

(3) plaintiff's remaining state law causes of action shall be REMANDED to Jessamine Circuit Court, Jessamine County, Kentucky; and

(3) the pretrial conference, currently set for August 11, 2005, and the trial of this matter, currently set for September 13, 2005, are hereby SET ASIDE.

This 13th day of July, 2005.

KARL S. FORESTER, SENIOR JUDGE